**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **AVIATION SERVICES LLC, CIG DEVELOPMENT LLC, and GREGORY J. LANDIS,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **No. 23 C 3103** |
| **UNITED STATES SMALL BUSINESS ADMINISTRATION,** | ) ) ) | **Judge Rebecca R. Pallmeyer** |
| **Defendant.** | ) | |
| **LYNDA RUSSO and KL ASSOCIATES LIMITED, LLC,** | ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **No. 23 C 3507** |
| **UNITED STATES SMALL BUSINESS ADMINISTRATION,** | ) ) ) | **Judge Rebecca R. Pallmeyer** |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs in these two related cases are small businesses and their respective owners who applied for loans through the United States Small Business Administration's ("SBA") Economic Injury Disaster Loan ("EIDL") program. After their loan applications were denied, Plaintiffs (all represented by the same attorney) submitted requests for information under the Freedom of Information Act ("FOIA") from SBA regarding the processing of their loan applications and, in addition, a broad range of "internal policy" and "statistic[al]" documentation. Plaintiffs do not explain the reasons behind their expansive requests, but it appears they seek evidence of fraud and/or inefficiency in SBA's administration of the EIDL program during the COVID-19 pandemic. SBA responded to Plaintiffs' requests by producing hundreds of documents, some of them partially-redacted, associated with Plaintiff's loan applications, but largely ignoring Plaintiff's requests for internal policy documents and statistical information. Plaintiffs then filed these suits,

contending that SBA's productions were inadequate and that the redactions violated FOIA.  Both sides have moved for summary judgment.  For the following reasons, each motion is granted in part and denied in part.

## BACKGROUND

### I.      Factual Background

#### A.      SBA and the EIDL Program

SBA's enabling act authorizes the agency to award loans (so-called "EIDL grants") to small businesses that have "suffered a substantial economic injury" from major disasters, natural disasters, or emergencies as determined by the President, the SBA Administrator, or by statute. 15 U.S.C. § 636(b)(2).  In 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), which appropriated funds to SBA for EIDL grants to small businesses suffering from the economic effects of the COVID-19 pandemic.  *See generally* 15 U.S.C. § 9009. The CARES Act specifically waived certain of the application requirements for small businesses seeking EIDL grants, streamlined the approval process, and allowed businesses applying for EIDL grants in the covered period (January 31, 2020–December 31, 2021) to seek an advance while their applications were pending.  15 U.S.C. § 9009(e)–(d).

#### B.      The Plaintiffs

Plaintiffs in the related cases are three small businesses and two individuals.  Two of the small businesses, Aviation Services LLC ("Aviation") and CIG Development LLC ("CIG"), are Illinois corporations owned by Gregory J. Landis ("Landis") (collectively, "*Aviation* Plaintiffs"). (*See* Am. Compl. [18] in No. 23 C 3103 (hereinafter "*Aviation* Am. Compl.") ¶¶ 5–7.)  The other small business, KL Associates ("KL"), is an Illinois corporation owned by Plaintiff Lynda Russo ("Russo") (collectively, "*Russo* Plaintiffs").[1]  (*See* Am. Compl. [18] in No. 23 C 3507 (hereinafter

---

[1]      Russo appears to also be a co-owner of KI (*see Aviation* DSOF ¶ 39), though Plaintiffs do not mention this in either complaint, nor in any declaration or brief.

"*Russo* Am. Compl.") ¶¶ 5–6.)  Each Plaintiff separately applied for EIDL grants through SBA during the pandemic.  (Def.'s Rule 56.1 Statement [28] in No. 23 C 3103 (hereinafter "*Aviation* DSOF") ¶ 7; Def.'s Rule 56.1 Statement [25] in No. 23 C 3507 (hereinafter "*Russo* DSOF") ¶ 7.) These court filings include no details on the nature of Plaintiffs' businesses, nor any explanation of the timeline or outcome of Plaintiffs' EIDL applications; Plaintiffs' briefs make clear, however, that the applications were denied—though they do not say when.  (*See* Pls.' Combined Resp. & Cross-Mot. for Summ. J. [31] in No. 23 C 3103 at 12 ("Defendant issued a denial on each of the loan applications . . . .").)

### C.    FOIA Requests at Issue

At issue in this case is SBA's response to six FOIA requests, all submitted on June 22, 2022, by Nicolette Glazer, the attorney who represents Plaintiffs in both of these cases.  (*See* Glazer Decl. ¶ 9.)[2]  The requests have the following identifying numbers assigned by SBA: SBA-2022-006795 (hereinafter "Request No. 6795") submitted by Aviation; SBA-2022-006796 (hereinafter "Request No. 6796") submitted by Landis; SBA-2022-006797 (hereinafter "Request No. 6797") submitted by CIG; SBA-2022-00679 (hereinafter "Request No. 6799") submitted by KL; and SBA-2022-00680 (hereinafter "Request No. 6800") and SBA-2023-003974 (hereinafter "Request No. 3974") submitted by Russo.

#### 1.    Request No. 6795

Glazer submitted Request No. 6795 on behalf of Aviation.  (*Aviation* DSOF ¶ 8.)  The request sought six types of records: (1) all records pertaining to an EIDL application "No. 3323805703,"[3] including all interagency and intra-agency communications about the

---

[2]    Glazer submitted the same declaration in connection with the parties' respective cross-motions for summary judgment.  It can be found at [28-2] in No. 23 C 3507, and [31-2] in No 23 C 3103.

[3]    The court surmises this number relates to a loan application submitted by Aviation, but the parties have not explained this, nor have they identified the business related to any of the loan application numbers mentioned in the various FOIA requests.

application; (2) internal policies and training materials for tracking and safeguarding CARES Act EIDL loan disbursements; (3) internal policies regarding "claw-back" procedures for erroneous disbursements to entities other than the approved EIDL applicant; (4) statistical data concerning EIDL applications that resulted in a bank's returning all or some of the funds;[4] (5) records identifying the reason for a bank's returning EIDL funds; and (6) any records identifying or referring to "Gregory J. Landis" or "Gregory Landis."  (*Id.*)

SBA acknowledged receipt of Request No. 6795 on June 22, 2022, and assigned the request to its Processing and Disbursement Center ("PDC").  (*Id.* ¶¶ 8–9.)  On June 24, PDC reached out to Glazer requesting "certificates of identity" forms signed by Aviation's owners (Gregory and Denise Landis), authorizing SBA to release documents directly to Glazer. (*Id.* ¶ 11.) Glazer submitted the signed forms on June 27 (Glazer Decl. ¶ 29), and PDC determined that the information sought was most likely to be found in the "RAPID database."[5]  (*Aviation* DSOF ¶ 12.) PDC then queried the RAPID database using the loan application number identified by the request, as well as a loan application number (3319299726) that PDC determined was "related." (*Id.* ¶ 14.)  The query identified 295 pages of responsive documents, which PDC staff produced, including "loan application summaries, SBA's internal notes, tax documents, and various other materials." (*Id.* ¶¶ 15–16.)  PDC applied redactions (blacking out specific information) to sixteen of the 295 pages, pursuant to FOIA Exemption 5 (*id.* ¶ 17), which permits an agency to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).

---

[4]     The court notes that the parties' submissions do not explain the purpose for which any of the Plaintiffs sought the requested policy and statistical information.  The record does not, for example, include claims that funds disbursed to Plaintiffs were returned to SBA, or that Plaintiffs have made fraud allegations against SBA in its administration of the EIDL program.

[5]     Neither party has explained the origin of the "RAPID" acronym.  SBA explains that "RAPID is a loan processing platform that was developed by a third-party vendor specifically to process loans as a result of the Covid-19 disaster declaration."  (*Aviation* DSOF ¶ 13.)

4

On June 27, 2022—the same day that Glazer provided the certificates of identity—SBA responded to Request No. 6795 in a letter signed by Mark Hoffpauir (an attorney in SBA's FOIA Department), producing the 295 pages of records, including those with redactions. (*Aviation* DSOF ¶ 18, Glazer Decl. ¶ 30; *see also* SBA Resp. Ltr. to Request No. 6795, [28-3] in No. 23 C 3103.) The letter explained that SBA had withheld documents pursuant to FOIA Exemption 5, and that Aviation had the right to an administrative appeal within 90 days. (SBA Resp. Ltr. to Request No. 6795 at 2.) [6] (A substantially similar letter and advisement was included in all the productions described below.)

### 2. Request No. 6796

Glazer submitted Request No. 6796 on behalf of Plaintiff Landis on June 22, 2022, along with a certificate authorizing SBA to release documents directly to Glazer. (*Aviation* DSOF ¶¶ 22–23.) This request was broad but straightforward: Glazer sought all SBA records "identifying, referring to, or including the term "Gregory J Landis" or "Gregory Landis." (*Id.*) SBA's FOIA office responded by email the following day, June 23, stating that the request did not describe the records sought by Landis with sufficient specificity. (*See* Glazer Decl. ¶ 35.) Replying on the same day, Glazer explained that Landis had submitted various loan applications on behalf of his businesses during the COVID-19 pandemic; Glazer identified four EIDL application numbers (001360003665, 3319299726, 3319298573, and 3304045297) that were associated with Landis, but stressed that the request "is not limited to loan files but to any other records the agency possesses, including but not limited to loan underwriting files, phone logs, contractors and staff notes, inter-agency, intra-agency, or agency to contractor emails, text, or other correspondence." (*Id.* ¶ 36.)

---

[6] Although the letter refers to documents as having been withheld, SBA has determined that some documents had portions redacted and that no responsive documents were in fact withheld in full. (*See Aviation* DSOF ¶ 19.)

Upon receiving Glazer's reply, SBA assigned the request to PDC, which once again determined that the RAPID database was most likely to contain the information sought by Landis. (*Aviation* DSOF ¶ 26.) PDC identified nine EIDL application numbers associated with Landis (none of them identified by Glazer in her email) and ran a query in the RAPID database using the application numbers as search terms. (*Id*. ¶ 28.) The search located 200 pages of records, including loan application summaries, internal notes, loan agreements, and tax documents. (*Id*. ¶ 29.) After review, PDC determined that all of the pages were responsive and produced them to Glazer on June 24, 2022, with redactions to 12 pages under FOIA Exemption 5. (*Id*. ¶¶ 30–31, 34; *see also* SBA Resp. Ltr. to Request No. 6796, [28-4] in 23 C 3103.) Like the No. 6795 Letter, the No. 6796 Letter informed Glazer of the redactions, (inaccurately) stated that documents were withheld rather than redacted due to Exemption 5, and explained Landis' right to an administrative appeal within 90 days. (*Id*. ¶¶ 35–36.)

PDC did not produce any responsive documents regarding the four application numbers provided by Glazer, for different reasons. First, PDC determined that one of the loan application numbers (001360003665) was not related to an EIDL application—neither party has explained what this loan application number indeed refers to. (*Id*. ¶ 33.) Second, PDC determined that all responsive documents regarding two of the loan application numbers (3319299726 and 3319298573) were already produced to Glazer in response to two other Requests: Request No. 6795 and Request No. 6797. (*Id*.) Finally, PDC declined to produce documents relating to loan application 3304045297 because that loan involved an additional owner other than Landis who had not submitted a certificate authorizing production to Glazer (the parties do not identify either the entity related to this loan application nor this owner). (*Id*.)

### 3. Request No. 6797

Glazer submitted Request No. 6797 on behalf of CIG Development on June 22, 2022. (*Id*. ¶ 38.) The request sought five kinds of records: (1) records pertaining to EIDL applications numbered 3319298573 and 1677379108; (2) records of internal policies regarding the

disbursement of funds for approved EIDL loan applications on a "first-in, first-out" basis, (3) records of internal policies regarding the expediting, prioritizing, or the order of disbursements for approved EIDL loans; (4) data regarding EIDL loans that were approved for increased funding and were funded; (5) data regarding EIDL loans that were approved for increased funding "but were funded."[7] (*Id*.) The request was accompanied by certificates from Landis and Russo authorizing SBA to release documents to Glazer. (*Id*. ¶ 39.) SBA assigned the request to PDC on June 24, 2022, two days after receiving it. (*Id*. ¶ 40–41.) PDC queried the RAPID database using just one of the application numbers identified in the request (3319298573)[8] and located 228 pages of responsive records including the loan application summary, SBA's internal notes, the loan agreement, tax documents, and other materials. (*Id*. ¶¶ 43–45.) PDC made redactions to ten pages of internal notes under FOIA Exemption 5 and produced all 228 pages of documents to Glazer on June 24, 2022. (*Id*. ¶¶ 45–47; *see also* SBA Resp. to Request No. 6797, [28-5] in No 23 C 3103.)

### 4. Request No. 6799

Glazer submitted Request No. 6799 on behalf of KL on June 22, 2022. (*Russo* DSOF ¶ 8.) The request sought documents relating to five topics: (1) the processing of two loan applications (Nos. 3304045297 and 8279037910); (2) SBA's internal policies for assuring timely funding of approved applications for loan increases; (3) internal policies regarding prioritizing or expediting funding for approved loans (both initial grants and modified loans); (4) internal policies regarding "preparers" (undefined) of EIDL applications; and (5) all records containing the term "Lynda Russo." (*Id*.) Glazer attached a certificate of identity from Russo authorizing SBA to deliver documents to Glazer to the Request. (*Id*. ¶ 9.) SBA received the request on June 22 and

---

[7]     The court assumes this is a typo in the original FOIA request, and that CIG meant to request data for loans that were approved for increased funding but *were not* funded.

[8]     SBA does not explain why PDC did not query the other application listed in the request (1677379108).

assigned the request to PDC that same day. (*Id*. ¶¶ 10–11.) PDC queried the RAPID database using only one of the loan application numbers included in the request (3304045297)[9] and located 248 pages of responsive documents. (*Id*. ¶ 15.) PDC made redactions to 19 pages according to FOIA Exemption 5 and produced the documents to Glazer on July 5, 2022. (*Id*. ¶¶ 17–18; *see also* SBA Resp. Ltr. to Request No. 679 [25-2] in No. 23 C 3507.)

### 5. Request No. 6800

Glazer submitted Request No. 6800 on behalf of Russo on June 22, 2022. (*Id*. ¶ 21.) The request sought four types of records: (1) records of internal policies and procedures for funding approved EIDL loans after May 16, 2022; (2) statistics and details regarding all EIDL loan applications that were approved and funded after May 16, 2022; (3) records of which approved loans were funded between April 1 and May 16, 2022; and (4) all records of loan applications where loan modification agreements (presumably between the applicant and the lender bank) were returned to SBA but either stalled or did not receive funding. (*Id*.) SBA received the request on June 22 and assigned the matter to PDC. (*Id*. ¶¶ 22–23.) PDC evaluated the request and determined that the records sought by the request were either already produced in response to Request No. 6799 or consisted of internal policies and program-wide statistics that were exempted from FOIA. (*Id*. ¶ 23.) PDC produced no documents regarding this request, and SBA has no record of Glazer making further inquiries about the request. (*Id*. ¶ 25.)

### 6. Request No. 3974

Glazer also claims to have submitted Request No. 3974 on June 22, 2022, on behalf of Russo. (*Id*. ¶ 39.) The request sought seven types of records from SBA: (1) any and all "contracts" or contract modifications between SBA and RER Solutions, Inc.,[10] Rocket Loans, Inc.,

---

[9] Again, there is no explanation for why there was no search for documents related to the other loan application number (8279037910) identified in the request.

[10] The parties do not directly explain RER's role in the EIDL program. It appears from the record, however, that RER is a third-party contractor hired by SBA to process some number

Rapid Finance, or any of their subsidiaries and parent companies; (2) all performance reports, audits, or evaluations of the aforementioned entities that were conducted or commissioned by SBA; (3) records of internal policies and procedures regarding the processing, classification, approval, and denial of EIDL applications as well as fraud prevention protocols; (4) data on occasions where CARES Act funds were received by a different bank than the bank listed on the EIDL applications; (5) data regarding CARES Act funds being transferred to EIDL applicants who used the same I.P. address on multiple applications; (6) statistical data on approved EIDL applicants using the same business address on multiple applications; and (7) all internal rules and procedures used to "prevent that bona fide applicants are not disqualified [from] obtaining funds." (*Id*.)

SBA does not have records of receiving this request in June 2022 and only learned of the request (and assigned its tracking number) from the *Russo* Complaint. (*Id*. ¶ 39.) SBA's investigation of this request differs greatly from its investigation of the other requests. SBA's FOIA Office (not PDC) searched an electronic database containing procurement solicitations and contracts (not RAPID) using a procurement instrument identifier number ("PIID," different than a loan application number) provided by Russo. (*Id*. ¶ 43.) The FOIA Office also searched "electronic files" (SBA does not explain which databases) for responsive documents using search terms "Coronavirus," "Coronavirus Processing," "Covid-19," and "Covid 19." (*Id*. ¶ 44.) The search uncovered loan funding information that was already publicly available in SBA's online document portal, or "reading room,"[11] but also located 67 pages of documents responsive to the request. (*Id*. ¶¶ 45–46.) These documents primarily related to a contract between SBA and RER

_____

of EIDL applications in the relevant time period. (*See* Glazer Decl. ¶ 23, Ex. E to Glazer Decl. at 62.)

[11] The "reading room" refers to SBA's online database of publicly available documents, which include public guidance as well as commonly requested documents. It can be accessed at https://www.sba.gov/about-sba/open-government/sba-guidance#id-sba-public-guidance-documents (last accessed March 13, 2025).

Solutions, as well as policy and procedure documents relating to the pandemic and EIDL program. (*Id*. ¶ 46.) SBA's Acquisition department applied redactions to eight pages of the contract document between SBA and RER, citing FOIA Exemption 4—which gives agencies the right to withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential." (*Id*. ¶ 48); 5 U.S.C. § 552(b)(4). SBA also redacted personal information of potential borrowers from the documents under FOIA Exemption 6, which exempts "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." (*Id*. ¶ 50); 5 U.S.C. § 552(b)(6). On September 5, 2023, SBA produced the 67 pages of responsive documents to Glazer. (*Id*.)

### 7. SBA's Additional Responses

Since the commencement of these cases, SBA has produced additional records. On August 30, 2023, Plaintiff produced 39 additional "policy and procedure" documents relating to the EIDL program and the Coronavirus pandemic. (*See id*. ¶ 54, *Aviation* DSOF ¶ 62.) On January 16, 2024, SBA provided un-redacted versions of the internal notes produced to Plaintiffs in response to Request No. 6799. (*Aviation* DSOF ¶ 67.)

### D. OHA Appeal and Decision

Glazer claims to have submitted two administrative appeals touching on each of the Plaintiffs' five requests that SBA responded to (one appeal grouping together the requests submitted by the *Aviation* Plaintiffs, the other grouping together requests submitted by the *Russo* Plaintiffs). (*See* Glazer Decl. ¶ 44.) Glazer has attached the shipping labels and tracking updates from USPS for the two packages containing the appeals, reflecting mailing of the two appeals on September 21 and September 22, 2022, and delivery of both appeals at SBA's offices on September 26, 2022. (*See* USPS Shipping Records, Glazer Decl. at 42–47.) SBA denies receiving the appeals on September 26, 2022, asserting that it only became aware of the appeals when Plaintiffs filed their complaints on May 17 and June 2, 2023, respectively. (*Aviation* DSOF ¶ 52; *Russo* DSOF ¶ 27.) The reason for this mix-up is a mystery, but at some point after receiving

the complaint (the specific date is not in the record), SBA assigned the appeals to its Office of Hearings and Appeals ("OHA") for resolution. (*Aviation* DSOF ¶ 53–54.) On August 4, 2023, OHA issued an administrative appeal decision regarding all five requests that Glazer had appealed, denying them in part and granting them in part. (*Id*. ¶¶ 55–56; *see* OHA Decision [28-6] in No. 23 C 3103.) While the specific materials in Glazer's appeals are not part of the record,[12] it appears from OHA's decision that Glazer's appeal challenged both the adequacy of SBA's searches and the lawfulness of the redactions. With respect to the adequacy of the searches, OHA denied the appeals, finding that SBA[13] had conducted an adequate search using the EIDL loan application numbers as search terms. (OHA Decision at 5–6.) With respect to the requests for statistical data, operating procedures, and internal policies, OHA ruled in favor of the appellants, finding that SBA had failed to provide links to its reading room where such information was publicly available—and provided links, in its written decision, to the reading room where such records could be found. (*Id*. at 6.) OHA also reassigned one item—the request for data where an EIDL loan was approved and the bank returned all or some of the loan funds ((4) in Request No. 6795)—to the Office of the Chief Financial Officer ("OCFO") for a direct response to Plaintiffs within 20 days. (*Id*.)[14] Finally, OHA determined that SBA had properly redacted privileged internal communications in the productions pursuant to FOIA Exemption 5 (*id*. at 6–8) and had properly redacted or withheld records of EIDL grants that had been approved but not funded pursuant to FOIA Exemption 6 (*id*. at 9–11).

---

[12]    Glazer represents in her declaration that at least one of these written appeals was "attached as Exhibit A" to Plaintiffs' original complaint (Glazer Decl. ¶ 13) but no such document is attached to either the *Russo* or *Aviation* complaint.

[13]    In the appeal denials, OHA refers to the Office of Capital Access (OCA) within SBA as the office that made the determinations regarding production and withholding (*see* OHA Decision at 4). OCA is not mentioned elsewhere in the record.

[14]    OCFO produced this information in the form of a spreadsheet (with borrowers' identifying information redacted) and it was provided to Glazer on September 8, 2023. (*Aviation* DSOF ¶ 65–66.) The spreadsheet is not in the record.

## II.    Procedural Background

Plaintiffs filed the complaints in *Aviation* [1] and *Russo* [1] on May 17 and June 2, 2023, respectively. Following OHA's decision on Plaintiffs' appeal and SBA's additional disclosures, Plaintiffs filed amended complaints on February 19, 2024 (*Russo*) and February 27, 2024 (*Aviation*). Relevant to the motions now before the court, the amended complaints bring three identical counts against SBA: first, Plaintiffs allege that SBA violated statutory deadlines in responding to Plaintiffs' appeals nearly a year after they were submitted (*Russo* Am. Compl. ¶¶ 33–36; *Aviation* Am. Compl. ¶¶ 41–44); second, that SBA unlawfully withheld responsive records by improperly invoking FOIA exemptions and failing to conduct adequate searches of Plaintiffs' requests (*Russo* Am. Compl. ¶¶ 39–40; *Aviation* Am. Compl. ¶¶ 46–48); and third, that SBA failed to fulfill its publication obligations under 5 U.S.C. § 552(a)(2) (*Russo* Am. Compl. ¶ 45; *Aviation* Am. Compl. ¶ 54). As relief, Plaintiffs seek a declaration that the requested records are not exempt from FOIA and an injunction ordering SBA to conduct additional searches and productions. (*Russo* Am. Compl. at 15; *Aviation* Am. Compl. at 15.)[15] SBA filed its answer [19] to the *Russo* Complaint on March 12, 2024, and its answer [21] to the *Aviation* Complaint on March 19, 2024, and now seeks summary judgment in both cases. (Def.'s Mot. [27] in No. 23 C 3103, Def.'s Mot. [24] in No. 23 C 3507.) With its motions for summary judgment and Local Rule 56.1 Statements, SBA attaches declarations from SBA attorney Stayce Harness, who outlines the procedures taken to review and respond to Plaintiffs' requests. (Ex. A to Def.'s Mot. [28-1] in No. 23 C 3103 (hereinafter "*Aviation* Harness Decl."), Ex. A to Def.'s Mot [25-1] in No. 23 C 3507 (hereinafter "*Russo* Harness Decl.")). SBA also provides the declaration of Oreoluwa Fashola, a Supervisory Government Information Specialist, who describes the agency's response to the

---

[15]    The *Russo* Complaint brings a claim (Count IV) for "Permanent Injunction and Declaration of Rights," but this appears to be a restatement of the relief sought for Counts I–III, rather than a distinct basis for relief. (*See Russo* Compl. ¶¶ 51–59.) Plaintiffs have also sought attorney fees (Count V), but they are not seeking summary judgment on this issue.

later-discovered Request No. 3974.  (*See* Fashola Decl. ¶ 1, [25-5] in No. 23 C 3507.)  Plaintiffs

responded and separately moved for summary judgment.  (*See* Pls.' Combined Resp. & Cross-

Mot. for Summ. J. [31] in No 23 C 3103 (hereinafter "*Aviation* Pls.' Resp."); Pls.' Combined Resp.

& Cross-Mot. for Summ. J. [28] in No 23 C 3507 (hereinafter "*Russo* Pls.' Resp.").)[16]

## LEGAL STANDARD

Summary judgment is proper only if "the pleadings, depositions, answers to the

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."

FED. R. CIV. P. 56(c).  A genuine issue of material fact exists when "there is sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty

Lobby*, Inc., 477 U.S. 242, 249 (1986).  In deciding whether a genuine dispute exists, the court

must view all the evidence and draw all reasonable inferences in favor of the non-moving party.

See *Weber v. Univ. Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010).  The standard for

summary judgment is unchanged for cross motions for summary judgment.  *Blow v. Bijora, Inc.*,

855 F.3d 793, 797 (7th Cir. 2017).

## DISCUSSION

Plaintiffs' three shared counts against SBA raise four distinct substantive claims under

FOIA: (1) SBA's responses to the requests were untimely, (2) SBA's search for records was

inadequate, (3) SBA's invocations of statutory exemptions to withhold documents was unlawful,[17]

---

[16]      The court will cite the parties' briefs as the following: Def.'s Mem. in Support of
Summ. J. [27-1] in No. 23 C 3103 (hereinafter "*Aviation* SBA Mem."); Def.'s Mem. in Support of
Summ. J. [24-1] in No. 23 C 3507 (hereinafter "*Russo* SBA Mem."); Def.'s Combined Reply &
Resp. in Opp. [34] in No. 23 C 3103 (hereinafter "*Aviation* SBA Reply"); Def.'s Combined Reply
& Resp. in Opp. [32] in No. 23 C 3507 (hereinafter "*Russo* SBA Reply"); Pls.' Reply [35] in No.
3103 (hereinafter "*Aviation* Pls.' Reply"); Pls.' Reply [33] in No. 3507 (hereinafter "*Russo* Pls.'
Reply").

[17]      Plaintiffs' complaints and briefing treat the inadequate search and unlawful
withholding claims as one count, but they represent "different kind[s] of FOIA suit[s]" with different

(4) SBA failed to publish responsive documents as required by statute.[18]  The court addresses each in turn.

## I.    Timeliness

Regarding Plaintiffs' claims that SBA's responses failed to abide by statutory deadlines, the applicable statutory provisions and relevant facts are not in dispute.  Upon a request for records, an agency must "determine within 20 days . . . after the receipt of any such request whether to comply with such request and shall immediately notify the [requester]" of the reasons for the determination and of their right to appeal.  5 U.S.C. § 552(6)(A)(i).  Upon receiving an appeal of the agency's response, the agency must "make a determination with respect to any appeal within twenty days . . . after the receipt of such appeal."  5 U.S.C. § 552(6)(A)(ii).  In this case, SBA responded to all but one of Plaintiffs' requests within days, informing them of the bases for withholding certain documents and advising of their right to appeal.  For the last request (No. 3974), SBA did not acknowledge receipt or provide any determination until litigation commenced nearly a year after it was submitted.  *See supra* p. 9.  Similarly, despite evidence that Plaintiffs' appeals to SBA's productions were delivered to SBA on September 26, 2022, SBA did not process those appeals until August 2023.  *See supra* pp. 10–11.  Thus, it appears from the record that SBA failed to abide by the deadlines set by § 552(6)(A)(i) and § 552(6)(A)(ii).  But these failures are not a legal basis for the relief sought by Plaintiff.

The statutory "remedy" for an agency's violation of § 552(6)(A)(i) and § 552(6)(A)(ii) is set out in the closely-following § 552(6)(C)(i); that section provides that "[a]ny person making a

---

standards for summary judgment.  *Rubman v. U.S. Citizenship & Immigr. Servs.*, 800 F.3d 381, 386 (7th Cir. 2015).  As such, the court discusses them discretely.

[18]      Plaintiffs incorporated arguments from the *Russo* briefs regarding the publication claim (Count III) by reference in the *Aviation* response (*see Aviation* Pls.' Resp. at 13), and from *Aviation* arguments on unlawful withholdings (Count II) into the *Russo* response (*see Russo* Pls.' Resp. at 8).  SBA criticizes this practice as an end-run around the court's page limits (*see Aviation* SBA Reply at 9–10, *Russo* SBA Reply at 7), but the court is less troubled by this, as the incorporations avoided inevitable duplicative arguments.

request to any agency for records . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph."  As such, "[i]f the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court."  *Citizens for Resp. & Ethics in Washington v. FEC*, 711 F.3d 180, 189 (D.C. Cir. 2013).  In this case, as Plaintiffs are already in court and SBA is not raising an exhaustion argument, the remedy is irrelevant.  Instead, Plaintiffs construe the FOIA's statutory deadlines as an independent basis for obtaining declaratory and injunctive relief.[19]  (*See Aviation* Pls.' Resp. at 10–11.)  They cite a line of cases, including *Gilmore v. United States Dep't of Energy*, 33 F. Supp. 2d 1184 (N.D. Cal. 1998), *Or. Nat. Desert Ass'n v. Gutierrez*, 409 F. Supp. 2d 1237 (D. Or. 2006), and *S. Yuba River Citizens League v Nat'l Marine Fisheries Serv.*, No. CIVS-06-2845 LKK/JFM, 2008 WL 2523819 (E.D. Cal. June 20, 2008), where courts have granted declaratory relief against agencies that failed to abide by statutory deadlines.  But *Gilmore*, *Gutierrez*, and *Yuba River* are distinguishable, both because of the agency conduct at issue and the relief sought by the respective plaintiffs.

In each of the three cases, the defendant agency not only delayed beyond the statutory deadline in responding to the plaintiff's requests but engaged in a pattern or repeated practice of such delays.  *See Gilmore*, 33 F. Supp. 2d at 1186; *Gutierrez*, 409 F. Supp. 2d at 1245; *Yuba River*, 2008 WL 2523819, at *5.  The plaintiffs therefore sought relief that would preempt future agency delays in processing their requests for documents, and the courts recognized that the defendant agencies were likely to continue their dilatory practices absent entry of a declaratory judgment.  *See Gilmore*, 33 F. Supp. 2d at 1186; *Gutierrez*, 409 F. Supp. 2d at 1244–45; *Yuba River*, 2008 WL 2523819, at *6.  Plaintiffs in this case have not alleged that SBA has a pattern or

---

[19]     This is a charitable reading of Plaintiff's submissions.  In fact, Plaintiffs do not clearly spell out what kind of injunctive or declaratory relief they seek from Count I specifically, nor does any of the relief sought in their complaints relate to the timeliness of SBA's responses. (*See Aviation* Am. Compl. at 10–11.)

practice of violating FOIA's statutory deadlines. To the contrary, the record shows that SBA responded promptly to every request that it processed. For those submissions it did not have a record of receiving (Request No. 3974 and the consolidated appeals), SBA again promptly responded upon becoming aware of them. Indeed, granting the remedy sought in *Gilmore*, *Gutierrez*, and *Yuba River* would raise non-trivial constitutional concerns: absent any claim that SBA's delays will continue in the future, a declaratory judgment regarding the timeliness of SBA's good-faith productions would be purely advisory. *See Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) ("A declaration that an agency's initial refusal to disclose requested information was unlawful, after the agency made that information available, would constitute an advisory opinion in contravention of Article III of the Constitution . . . . [T]his will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future.").

Significantly, the relief Plaintiffs request here is unrelated to delays in SBA's responses. As noted, unlike the *Gilmore*, *Gutierrez*, and *Yuba River* plaintiffs, Plaintiffs do not seek a declaration that SBA has a policy or routine practice of delaying FOIA responses. Instead, they seek a judgment from this court declaring SBA's searches inadequate and ordering SBA to release withheld documents and conduct further searches for records. (*See Russo* Am. Compl. at 15.) But the fact that a FOIA production is late does not translate to a finding of inadequacy. *See Hainey v. U.S. Dep't of the Interior*, 925 F. Supp. 2d 34, 42 (D.D.C. 2013) ("While . . . the Department's responses were untimely under the statute, the Department's untimely responses, in and of themselves, do not entitle Hainey to judgment in her favor."); *Richardson v. Dep't of Justice*, 730 F. Supp. 2d 225, 231–32 (D.D.C. 2010) ("The timing of an agency's release of records responsive to a FOIA request does not determine whether the agency has complied with its obligations under the FOIA."); *Citizens for a Strong N.H., Inc. v. IRS*, No. 14-CV-487-LM, 2015 WL 5098536, at *6 (D.N.H. Aug. 31, 2015) ("The court finds that an agency's failure to comply with FOIA's timeliness requirements, alone, does not entitle the requesting party to summary judgment."). To obtain the judgment they seek in this action, Plaintiffs must show that SBA's

searches, regardless of when they took place, were inadequate, and its withholdings were unjustified (issues addressed below). "And if the [c]ourt determines that the agency has, however belatedly, released all nonexempt material, it has no further judicial function to perform under the FOIA." *Richardson*, 730 F. Supp. 2d at 232 (internal quotations omitted).

## II. Adequacy of Search

Timeliness aside, Plaintiffs contend that SBA failed its "obligation under FOIA to conduct an adequate search for responsive records." *Ewell v. DOJ*, 153 F. Supp. 3d 294, 301 (D.D.C. 2016). "To prevail on summary judgment in this type of FOIA claim, the agency must show that there is no genuine issue of material fact about the adequacy of its records search." *Rubman*, 800 F.3d at 387. The adequacy of the search is judged by a reasonableness standard: "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Id*. (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "Good faith is presumed, and it can be reinforced by evidence of the agency's attempts to satisfy the request." *Henson v. HHS*, 892 F.3d 868, 875 (7th Cir. 2018). In determining whether a search was "reasonable" under the circumstances, the court relies on "reasonably detailed nonconclusory affidavits [from the agency] submitted in good faith." *Rubman*, 899 F.3d at 387 (quoting *Matter of Wade*, 969 F.2d 241, 249 n.11 (7th Cir.1992)). Such affidavits must "set forth the search terms used in electronic searches and the kind of search performed by the agency[] and aver that all files likely to contain responsive documents were searched." *Henson*, 892 F.3d at 875.

The FOIA requester can respond to the agency's affidavits by offering "countervailing evidence" that the search was inadequate. *Rubman*, 800 F.3d at 387 (quoting *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003). "[I]f a review of the record raises substantial doubt [about the adequacy of the search], particularly in view of well defined requests and positive indications of overlooked materials, summary judgment [in favor of the agency] is inappropriate." *Id*. But even if the court finds that the agency's search is inadequate, the

17

requester must meet the "low bar" of "show[ing] some reason to think that the document would have turned up if the agency had looked for it." *Id.* (internal quotations omitted).

As noted, SBA has submitted detailed declarations from Stayce Harness and Oreoluwa Fashola describing the actions taken by the agency in response to the six requests at issue. The only question for the court is whether Harness and Fashola have provided sufficient detail to justify the agency's actions, and whether Plaintiffs have presented "countervailing evidence" that the actions described by Harness and Fashola were not reasonably expected to produce the information requested.

### A. Request No. 6795

Request No. 6795 requested information in four general categories: records pertaining to specific EIDL applications submitted by Aviation, internal policy documents regarding loan payments and "claw back" procedures, statistical data of returned funds and records explaining such returns, and records pertaining to Gregory Landis. *See supra* p. 3.

PDC's initial search in response to this request was limited to the first category of requested information: PDC did no more than use the EIDL application numbers associated with Aviation as search terms in the RAPID database, and then only produced documents relating to those numbers. *See supra* p. 4. As Harness explains in her declaration, because the RAPID database stored all EIDL loan processing information, using the EIDL application numbers as search terms in RAPID was reasonably expected to return the information sought by Aviation. (*Aviation* Harness Decl. ¶ 10.)

PDC's initial search was not the extent of SBA's response to this request. After processing Plaintiffs' appeals, OHA directed the Office of the Chief Financial Officer to conduct additional searches for the data regarding returned EIDL loan funds and make additional productions within 20 days. OCFO "ran a query of the RAPID database using search terms from request number SBA-2022-006795 and produced a spreadsheet with responsive EIDL loans." (*Aviation* Harness Decl. ¶ 37.) From this description alone, however, the court cannot determine whether OCFO's

search of the RAPID database was reasonable under the circumstances.  While RAPID appears to be the right database to have searched, Harness' description of the search does not identify the specific search terms used, nor does Harness explain whether OCFO searched for records that would reveal the reason for the returned funds, as requested by Aviation.  This does not mean that OCFO's search was necessarily unreasonable, but Harness' declaration is not "reasonably detailed" with respect to OCFO's search.  *Rubman*, 899 F.3d at 387.  The court thus directs SBA to supplement Harness' declaration to explain what specific search terms were used to respond to Aviation's request for statistical records, and why these terms were reasonably calculated to produce all responsive records.

The court reaches a similar conclusion regarding OHA's provision of links to SBA's reading room in response to Aviation's requests for internal policy documents.  Though PDC's initial search for documents did not include an attempt to respond to Aviation's request for internal policy records, OHA recognized this deficiency and provided specific links to publicly-available policy documents it deemed responsive to Plaintiffs' requests.  (OHA Decision at 6.)  Additionally, on August 30, 2023, SBA instructed PDC to run an additional search of "internal policy and procedural documents."  (*Aviation* Harness Decl. ¶ 35.)  But neither OHA's decision nor Harness' declaration explains how these additional productions are responsive.  OHA's decision does not explain what methods it used to determine that the policies sought by Plaintiffs were "publicly available," or that the specific links provided would be responsive to Aviation's request for internal policy documents; Harness does not identify the search terms PDC used to find responsive internal policy documents.  SBA's submissions are thus not "reasonably detailed" to inform the court that its responses to Aviation's request for policy documents were adequate.  At the same time, the court recognizes that Aviation's request for documents was broad, and Plaintiffs have neither identified specific documents that were overlooked nor explained which requested policies were missing from SBA's supplemental productions.  As such, the court withholds judgment on the adequacy of SBA's search for policy documents pending further submissions from the parties.

Finally, though Request No. 6795 also sought any records relating to Gregory Landis, SBA produced such documents in relation to Request No. 6796; the court discusses the adequacy of SBA's response to this request in the next section.

### B. Request No. 6796

This request, submitted on behalf of Plaintiff Landis, sought all records referring to "Gregory Landis" or "Gregory J Landis." *See supra* p. 5. At SBA's request, Glazer (on behalf of Landis) provided four specific application numbers associated with Landis in a letter but clarified that "the request . . . is not limited to loan files but to any other records the agency possesses." (Glazer Decl. ¶ 36.) In that same letter, Glazer advised that "the search should be done in all locations reasonably likely to contain all responsive documents based on the agency record keeping protocol for Emergency EIDL loans." (*Id*.) PDC then ran a search of the RAPID system using Landis' name and nine EIDL numbers it had associated with Landis. (*Aviation* Harness Decl. ¶ 18.)

Under the circumstances, PDC's search of the RAPID database at SBA's request was a reasonable and good faith response to Request No. 6796. In clarifying the nature of Landis' request, Glazer's letter itself specified that searches were to be based on "record keeping protocol for Emergency EIDL loans." (Glazer Decl. ¶ 36.) Harness has established that RAPID was the database most likely to contain information regarding EIDL loan processing, and PDC used both Landis' name (as requested) and many loan application numbers associated with him to produce responsive documents. PDC chose not to run searches using the four application numbers provided by Glazer, but that choice was reasonable: For two of the provided numbers, SBA was already producing documents in response to Requests Nos. 6796 & 6799. For another application number, individuals beside Landis were listed as owners and had not given consent

to Glazer's receiving documents.[20]  The fourth loan application number provided by Glazer for which PDC did not run a search was not an EIDL application.  As Glazer specifically advised SBA of Landis' concern for loans that were part of a "COVID-19 related program" and requested records regarding EIDL loans (Glazer Decl. ¶ 36), it was reasonable for PDC to assume that a loan unrelated to EIDL was not relevant to Landis' request.  Further, though Landis' request sought records relating to his name, PDC went beyond those terms and used nine EIDL numbers not identified by Glazer, further demonstrating good faith in response to this request.  *See Henson*, 892 F.3d at 875 ("[Good faith] can be reinforced by evidence of the agency's attempts to satisfy the request.").

### C.  Request No. 6797

The court's appraisal of SBA's search in response to Request No. 6797 is similar to its analysis of Request No. 6795.  This request, submitted on behalf of CIG, sought records relating to specific loan application numbers (3319298573 and 1677379108), internal policies regarding SBA's disbursement of approved funds, and data concerning circumstances in which SBA had approved an increase in loan funding.  *See supra* pp. 6–7.  PDC then ran searches of the RAPID system using one of the application numbers provided.  As discussed above, PDC's use of the application number provided by Plaintiff as a search term was reasonably calculated to produce responsive documents.  Additionally, regarding the policy documents sought by CIG, the court's previous discussion of OHA's disclosure of links to the reading room and PDC's supplemental production holds here.  *See supra* p. 19.  SBA must provide more information about OHA and PDC's methods, explaining why such methods were responsive to this request.

---

[20]     Though Plaintiffs' complaints allege that SBA's practice of requiring "wet ink" signatures on certifications of identity is unlawful (*see Aviation* Am. Compl. at 15), they make no argument to that effect in their briefing, nor otherwise suggest that they were prejudiced by the requirement.  The court has no reason to think that PDC's application of the certificate requirement here was unreasonable.

But SBA's response to this request differs in two respects from its response to Request No. 6795. First, SBA provides no explanation for PDC's failure to use the other loan application number provided (1677379108) as a search term. Though it appears that the number relates to a non-EIDL loan application,[21] the CIG request was not limited to EIDL-related records. Given this record, the court directs SBA to run a search of the appropriate database for records regarding Loan No. 1677379108.

Second, relating to requested statistical data, in responding to Request No. 6795, OHA ordered OCFO to conduct additional searches and provide supplemental responses to Plaintiffs. (OHA Decision at 6.) For this request, however, OHA determined that all of the data regarding approved increases of funds is exempt under FOIA Exemption 6, and did not remand the request for any additional search. (*Id*. at 10.) The court discusses whether SBA lawfully invoked Exemption 6 to categorically refuse to search for this data below, *see infra* pp. 31–33.

### D. Request No. 6799

This request sought records regarding two specific loan applications (Nos. 3304045297 and 8279037910), internal policies regarding SBA's approval process, and all records containing the term "Lynda Russo." *See supra* p. 7. As for the specific loan information, PDC used "3304045297" and produced all responsive documents, but did not use "8279037910" in any search. Absent an explanation from SBA for why this term was ignored, the court directs SBA to run a search using that loan application number.

As for the various policy documents sought by this request, the court refers to its prior reasoning—the burden is on SBA to show that its productions of policy documents were reasonable and responsive.

Finally, in response to the KL request for all documents relating to Lynda Russo, it does not appear that SBA conducted any search beyond PDC's search using the one loan application

---

[21] The request describes the number as a "Loan number" instead of an "Emergency EIDL application number." (*See Aviation* Harness Decl. ¶ 23.)

number. Nor does Harness' declaration explain why a search for documents involving Russo's name was not conducted. At the very least, SBA must respond to this request in the same manner it responded to Request No. 6796's request for all records referring to "Gregory Landis." To do so, it may seek clarification from Plaintiff Russo about the scope of the search, and/or identify all loan application numbers associated with her for use as search terms. (*See Aviation* Harness Decl. ¶ 18.)

### E. Request No. 6800

SBA produced no response to Request No. 6800, which sought internal policies regarding the funding of approved EIDL applications as well as detailed statistics and records of loan applications that were approved, funded, or modified after April 1, 2022. *See supra* p. 8. In reviewing this request, PDC determined that the information sought was either produced already in response to Request No. 6799 or exempt from FOIA production. As the court reads Request No. 6800, however, it is not fully congruent with Request No. 6799; it seeks different kinds of policy documents from SBA (policies regarding funding approved loans versus policies regarding the approval process) and seeks records about other loans approved by SBA rather than records pertaining to Russo's own application. The court is nevertheless not ruling at this time on the question of whether SBA's search (or failure to search) in response to this request was unreasonable: the court's prior discussion of SBA's subsequent disclosure of policy documents applies to the policy documents sought here, and the court discusses whether the withholding of all information regarding approved EIDL loan applications was lawful below, *see infra* pp. 31–33.

### F. Request No. 3974

Russo's final request sought records concerning contracts between SBA and RER Solutions, various internal policies regarding the funding, approval, and denial of EIDL applications, and various forms of "statistical data." *See supra* p. 9. As this request was not initially processed by SBA when it was purportedly sent on June 22, 2022, SBA's response to this request after the start of litigation followed a somewhat different process. Instead of searching

the RAPID database, Fashola explains that SBA's FOIA Office searched its database of contracts, solicitations, and orders using an identifier provided by Russo. (*See* Fashola Decl. ¶ 6.) Fashola also explains that the FOIA Office used the terms "Coronavirus," "Coronavirus Processing," "Covid-19," and "Covid 19" to search "electronic files" for responsive policy documents, which it then produced to Russo. (*Id*.) Fashola also explains that SBA withheld "information relating to third party loan applications" (the court presumes this is a reference to loan applications submitted by entities other than Plaintiffs), which would cover all the statistical data sought by this request, in full under FOIA Exemption 6. (*See id*. ¶ 14.)

With respect to documents relating to SBA's contracts with RER Solutions, SBA's search within its procurement database used the procurement identification number Russo provided and was thus reasonably calculated to produce the requested records. As for the request for internal policy documents, the Fashola declaration identified the search terms used, and, as Russo's request was focused on COVID-era EIDL policy, those terms were reasonably used to locate policy documents sought by this request. Moreover, Plaintiffs have provided no countervailing evidence that SBA's production of these policy documents were deficient, much less identified a specific type of policy information not contained in SBA's production. Finally, the court addresses the propriety of SBA's withholding in full of "information relating to third party loan applications" below, *see infra* pp. 31–33.

### III. Unlawful Withholding

An agency that withholds documents in response to a FOIA request "bears the burden of proving the applicability of claimed exemptions." *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). The agency must show "by a preponderance of evidence that a withheld document falls within one of the exemptions." *Stevens v. U.S. Immigr. & Customs Enf't*, 432 F. Supp. 3d 752, 760 (N.D. Ill. 2020) (quoting *Enviro Tech Int'l, Inc. v. EPA*, 371 F.3d 370, 374 (7th Cir. 2004)). The agency meets this burden "only if the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to

demonstrate that material withheld is logically within the domain of the exemption claimed." *Id*. (quoting *Patterson v. IRS*, 56 F.3d 832, 836 (7th Cir. 1995) (internal citations omitted)).

Here, SBA has provided relevant information by way of *Vaughn* indices: spreadsheets that set out in detail, for each withholding, the subject and basis for the withholding. *See Hall & Assocs. v. EPA*, 956 F.3d 621, 627 n.2 (D.C. Cir. 2020) ("A *Vaughn* Index consists of a detailed affidavit, the purpose of which is to permit the court system effectively and efficiently to evaluate the factual nature of disputed information in a FOIA case.") (quotations and citations omitted). SBA has submitted three *Vaughn* indices in total: one describing the withholdings in its productions to the *Aviation* Plaintiffs ([28-8] in No. 23 C 3103); one describing the withholdings in Requests No. 6799 and 6800 ([25-4] in No. 23 C 3507); and one describing the withholdings in the later-processed Request No. 3974 ([25-7] in No. 23 C 3507).[22]

The information withheld by SBA in this case falls into four general categories: (1) case file notes reflecting SBA's deliberative process redacted under FOIA Exemption 5, which shields inter-agency or intra-agency memorandums or letters (*see Aviation Vaughn* Index at 2–4; *Russo Vaughn* Index I at 2); (2) names and addresses of third party borrowers redacted from statistical data under FOIA Exemption 6 (*see Aviation Vaughn* Index at 4); (3) records involving third party loan applications that were withheld in full under FOIA Exemption 6, for sensitive personnel or medical files (*see id*. at 5; *Russo Vaughn* Index I at 2; *Russo Vaughn* Index II at 2); and (4) RER's confidential business information redacted from RER contract documents under FOIA Exemption 4 (*see Russo Vaughn* Index II at 2).

### A. Case File Notes

In responding to Requests Nos. 6795, 6796, 6797, and 6799, PDC used specific loan application numbers as search terms in the RAPID system, revealing 971 application-specific documents that it then produced to Plaintiffs. Of these 971 documents, PDC made redactions to

---

[22]     Hereinafter, these indices will be cited as "*Aviation Vaughn* Index," "*Russo Vaughn* Index I," and "*Russo Vaughn* Index II," respectively.

57 under FOIA Exemption 5. SBA's *Vaughn* indices provide entries for each of these redactions, organized by loan-application number, detailing how many documents were redacted, the date the documents were created, and the basis for the partial withholding. (*See Aviation Vaughn Index* at 2, *Russo Vaughn* Index I at 2.) SBA's reasons for withholding each of these documents was the same: SBA asserts that the documents consisted of "case file notes" regarding the specific loan applications, and "were redacted to protect information reflecting internal deliberations by SBA employees relating to the agency's consideration of [the loan application], including discussions regarding certain sensitive details and concerns that were raised during the application process based on the information provided by the loan applicant." (*See id*.)

Among the various privileges that an agency may assert to claim an exemption under FOIA Exemption 5, the "deliberative process privilege" allows an agency to "withhold all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be." *Nat'l Immigrant Just. Ctr. v. DOJ*, 953 F.3d 503, 508 (7th Cir. 2020) (quoting *NLRB v. Sears, Roebuck & Co*., 421 U.S. 132, 153 (1975)). To invoke the deliberative process privilege in withholding requested information, the agency must show that the material is both "pre-decisional" and "deliberative." *Id*. Material is "pre-decisional" if it is "generated *before* the adoption of an agency policy." *Id*. (quoting *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997)). It is "deliberative" if it "reflect[s] the give-and-take of the consultative process." *Id*. Here, SBA's *Vaughn* indices demonstrate that the redacted case note files contained information that was both pre-decisional and deliberative. First, SBA has explained that the redacted information concerned "the agency's consideration of the loan application[s] in question." (*See Aviation Vaughn* Index at 2.) As such, the documents were clearly produced prior to SBA's final determination on the applications. Second, the indices describe the information redacted as "discussions regarding certain sensitive details and concerns that were raised during the application process based on the information provided by the loan applicant." (*See id*.) This account, while general, is sufficient to show that the redacted information was deliberative—it

reflected internal discussions about agency concerns about the applications, well within the ambit of the deliberative process.

For their part, Plaintiffs fault SBA's *Vaughn* indices for "grouping all withheld documents together" and "provid[ing] no details as to what the information" redacted consists of. (*See Aviation* Pls.' Resp. at 12.) Plaintiffs cite no authority, however, requiring an agency to create a separate *Vaughn* index entry for each individual document. Here, given that all internal deliberations regarding the same loan application would be exempt for the same reasons, it was reasonable for SBA to group its explanations of the redactions by the loan application number referred to in the case file notes. *See Odland v. FERC,* 34 F. Supp. 3d 3, 17 (D.D.C. 2014) ("The agency does not need to justify withholdings 'document-by-document' but instead may do so 'category-of-document by category-of-document,' so long as its definitions of the categories are sufficient to allow a court to determine whether the claimed exemptions are properly applied."). Moreover, contrary to Plaintiffs' arguments, SBA has the burden of describing "the documents withheld and the justifications for nondisclosure," not the redacted information itself, with "detail and with sufficient specificity." *See Stevens*, 432 F. Supp. 3d at 760. SBA in this case has provided sufficient detail about the subject, date, and number of documents subject to withholding, and has provided the legal basis for the redactions. Absent countervailing evidence from Plaintiff casting doubt on SBA's representations, SBA has met its burden to invoke Exemption 5.[23]

## B.    Redacted Names and Addresses

At OHA's direction, in responding to Request No. 6795, OCFO "ran a query of the RAPID database using search terms from request number SBA-2022-006795" and produced a spreadsheet with statistical data of EIDL applications where a bank had returned some or all the

---

[23]    The court notes that Plaintiffs, for the first time in their reply briefs, ask the court to conduct an in-camera review of the documents in question to determine the propriety of SBA's withholding. (*See Aviation* Pls.' Reply at 9; *Russo* Pls.' Reply at 9.) The request is arguably untimely. In any event, FOIA does not require the court to perform an in-camera review if the agency's *Vaughn* indices demonstrate that the withheld information falls within the claimed exception, and there is no indication of bad faith. *See ACLU*, 628 F.3d at 626–27.

approved funds to SBA. (*Aviation* Harness Decl. ¶ 37.) OCFO redacted, from the spreadsheet, the names, business addresses, and bank account information of third-party borrowers (i.e. EIDL applicants other than Plaintiffs). (*Aviation Vaughn* Index at 4.) In its *Vaughn* index, SBA explains that the third-party borrower information was withheld pursuant to FOIA Exemption 6. (*Id.*)

FOIA Exemption 6 excuses the disclosure of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Supreme Court has construed this language broadly to cover "detailed Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982); *see also Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) ("We have also read the statute to exempt not just files, but also bits of personal information, such as names and addresses, the release of which would 'create[] a palpable threat to privacy.'") (quoting *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 391 (D.C. Cir. 1987)). The spreadsheet at issue here sets forth individual names, addresses, and bank account numbers traceable to specific loan applicants—information that falls easily into the ambit of Exemption 6. *See WP Co. LLC v. SBA*, 502 F. Supp. 3d 1, 17 (D.D.C. 2020) (hereinafter "*Washington Post*") (holding that "names and addresses of sole proprietorships and independent contractors that received EIDL loans of any amount" qualified "as 'personnel and medical files and similar files.'"). Thus, the court turns to the substantive question under Exemption 6: whether disclosure of the EIDL applicants' names, addresses, and bank account information would constitute a "clearly unwarranted invasion of privacy." In resolving this question, "the court must balance an individual's right to privacy against the Act's policy of opening agency action to the light of public scrutiny." *Henson*, 892 F.3d at 878. "[U]nless the invasion of privacy is 'clearly unwarranted,' the public interest in disclosure must prevail, and the agency may not withhold the files under Exemption 6." *Washington Post*, 502 F. Supp. 3d at 26 (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 177 (1991)).

*Washington Post* presents an instructive example of this balancing in the context of the EIDL program. The plaintiff news organizations sought records relating to SBA's COVID-related loan programs, including the EIDL program. *Id*. at 9. In responding, SBA invoked Exemption 6 and withheld the names and addresses of individual loan applicants who had received EIDL loan funding. *Id*. at 17. Beginning with the privacy interest, the court observed that the loan applicants' interest in their names and addresses was "weak." *Id*. at 21. While "disclosing records that 'reveal financial information easily traceable to an individual . . . jeopardizes a personal privacy interest that Exemption 6 protects,'" the court determined that "SBA's own loan materials," which advised applicants that their names and loan amounts may be disclosed, "substantially diminish the privacy interest at stake." *Id*. at 18–19.[24] The court also observed that SBA's FOIA website had, for previous loan programs, made publicly available the names and addresses of all individuals and entities awarded loans since 1991. *Id*. at 20. Loan applicants thus submitted their names and addresses to SBA with an understanding that such information might later be disclosed.

In comparison, the court found that the Act's purpose in allowing public scrutiny was immense "[i]n light of SBA's awesome statutory responsibility to administer the federal government's effort at keeping the nation's small businesses afloat amidst an economic and health crisis of unprecedented proportions." *Id.* at 22. "Release of the full range of borrower identities would . . . enable the press and the public to monitor whether taxpayer funds have been distributed fairly and equitably." *Id*. The balance of these interests weighed in favor of disclosing applicants' names and identities.

*Washington Post* has similarities to this case that make it particularly persuasive; it relates to the same agency and the same loan programs at issue in Aviation's request. The information sought by Aviation here (data where approved funds were returned by an issuing bank) is

---

[24]    The parties do not discuss this issue, but the court presumes that this same disclosure notice, which *Washington Post* identified was included in each EIDL application form was included for the loan applications at issue in Plaintiff's requests.

narrower than the information sought by the news organizations in *Washington Post.* But the release of information regarding approved loan applications where a bank returned the approved funds would similarly serve the public interest in ensuring the efficacy of SBA's loan approval process. Moreover, since *Washington Post*, SBA has made publicly available the names and addresses of all EIDL awardees. *See* SBA FOIA Website, "Frequently Requested Records," https://pal.sba.gov/app/Home.aspx (last accessed December 31, 2024). As the names and addresses of EIDL applicants are not protected by privacy interests, SBA does not explain why identifying such information in the spreadsheet would create new privacy concerns.[25] At least as regarding the names and addresses of EIDL loan applicants, disclosure is not "clearly unwarranted."

The redacted bank accounts are a different story. Unlike names and addresses, bank account numbers are not included in SBA's publicly available records, nor are applicants apprised in SBA's forms that such information may be disclosed. *Cf. Washington Post*, 502 F. Supp. 3d at 19–20. Disclosing bank account numbers to the public exposes the individuals and entities in SBA's records to fraud and potential identity theft. *See Pub. J. Found. v. Farm Serv. Agency*, 538 F. Supp. 3d 934, 945 (N.D. Cal. 2021) ("[I]nformation that reveals sensitive personally-identifiable information (such as social security numbers, bank account information, personal assets, etc.)

---

[25]     SBA repeatedly contends in their briefing that the burden is on Plaintiffs to establish a "significant countervailing public benefit" favoring disclosure. (*See Aviation* SBA Mem. at 9–10.) SBA cites *Natl. Archives and Records Admin. v. Favish*, 541 U.S. 157 (2004) and *Rimmer v. Holder*, 700 F.3d 246 (6th Cir. 2012) in identifying this burden. (*See id.*) But SBA confuses which exemption it is claiming; the burden is only on the requester to show a "significant countervailing public benefit" when an agency withholds under Exemption 7(C), not Exemption 6. *See Favish*, 541 U.S. at 172 ("Where the privacy concerns addressed by *Exemption 7(C)* are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure.") (emphasis added); *Rimmer*, 700 F. 3d at 257 (discussing standard for Exemption 7(C), not Exemption 6). Exemption 7(C) refers to information compiled for law enforcement purposes, and "allows an agency to withhold a broader range of information than Exemption 6." *Rimmer*, 700 F. 3d at 256. Indeed, both cases cited by SBA are careful to distinguish the Exemption 7(C) standard—which places a burden on the requester—from the less generous Exemption 6 standard—which does not. *See id.*; *Favish*, 541 U.S. at 157–58 ("[Exemption 7(C)] is in marked contrast to Exemption 6 . . . .").

should be withheld because this information would make individuals vulnerable to identity theft . . . ."); *Jud. Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 37 (D.D.C. 2000) ("Disclosing personal bank account numbers would constitute a clearly unwarranted invasion of personal privacy because the information could be used for nefarious purposes."). As Plaintiffs have not identified any reason why the disclosure of these bank account numbers would significantly aid the Act's purpose in scrutinizing SBA's functions, SBA was justified in redacting individual bank account numbers under Exemption 6.

The court's analysis of the redacted bank account numbers cannot end there, however, because SBA redacted not only bank accounts belonging to individuals, but "entities" as well. (*See* Def.'s Mot. in No. 23 C 3103 at 10 ("In particular, SBA withheld the names and addresses of individual borrowers, as well as the bank account information for all borrowers (both individuals *and* entities).").) Exemption 6 does not protect the privacy interests of businesses. *See Multi AG Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008). Insofar as SBA withheld the bank account number belonging to a business or corporation, rather than an individual, its invocation of Exemption 6 was improper.[26] *Cf. Jud. Watch, Inc.*, 108 F. Supp. 2d at 37 ("The Bank is applying Exemption 6 to those bank accounts that might be in the name of a particular individual, as opposed to the name of a company or business entity. This invocation of Exemption 6 is proper."); *see also Cardona v. U.S. I.N.S.*, No. 93 C 3912, 1995 WL 68747, at *3 (N.D. Ill. Feb. 16, 1995) (bank account numbers were wrongly withheld under Exemption 6 where agency could not identify whether accounts belonged to individuals or organizations). SBA must now segregate those bank accounts belonging to non-personal entities and disclose them.

---

[26] Bank account numbers of corporations or businesses may be exempt under Exemption 4, which protects the disclosure of "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4); *see Microsoft Corp. v. IRS*, No. C15-369 RSM, 2023 WL 255801 (W.D. Wash. Jan. 18, 2023) (finding corporate bank account numbers properly withheld under Exemption 4). But SBA did not invoke Exemption 4 in withholding these records.

### C.    Third Party Application Information Withheld in Full

The third category of information withheld from production pursuant to Exemption 6 is third-party EIDL application information.  Specifically, in Requests Nos. 6797, 6800, and 3974, Plaintiff seeks "statistical data" and records involving third-party loan applications.  (*Aviation Vaughn* Index at 5, *Russo Vaughn* Index I at 2, *Russo Vaughn* Index II at 2.)  As reflected in the *Vaughn* indices, SBA declined to provide any information concerning EIDL loans that had been approved for increased funding, but for which the funding was stalled or never received.  (*Id.*)  SBA further declined to respond to the information sought by Request No. 3974 regarding occasions where CARES Act funds were received by a bank other than the one listed on the EIDL applications, where CARES Act funds were transferred to EIDL applicants using the same I.P. address on multiple applications, and where approved EIDL applicants used the same business address on multiple applications.  *Supra* p. 9.  Neither Harness' nor Fashola's declarations mention any search relating to these specific requests; it thus appears that SBA invoked Exemption 6 to not only withhold responsive documents it identified, but to refrain from conducting a search at all.[27]

The Seventh Circuit has not provided guidance on how to evaluate an agency's decision to categorically refrain from searching for responsive documents pursuant to an exemption. Courts in the D.C. Circuit have found, in specific circumstances, that an agency's "categorical refusal" to conduct a search may be justified if the agency can show that "*all* responsive documents resulting from such searches would be exempt from disclosure under FOIA."  *Jett v.*

---

[27]    SBA did not make what is called a "*Glomar* response," by which an agency refuses to search for a document because confirming or denying the existence of a responsive document would itself threaten the interests protected by the FOIA exemptions (privacy, national security, etc.).  *White v. DOJ.*, 16 F.4th 539, 541–42 (7th Cir. 2021) (citing *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)).  Here, SBA has not claimed that identifying the existence of responsive records would by itself threaten FOIA-recognized interests; instead, SBA says only that the content of responsive records would infringe on privacy interests of third parties protected under Exemption 6, if disclosed.

*FBI*, 139 F. Supp. 3d 352, 366 (D.D.C. 2015); *see also Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) ("Because a search for records 'pertaining to' specific individuals . . . would have added only information that we have concluded is protected by Exemption 7(C), it follows that the FBI was correct in declining to search for such documents.").[28]

SBA has not made such a showing.  Even assuming that disclosure of some of the statistical data sought by Plaintiffs would threaten the personal privacy of certain third-party loan applicants, SBA has not offered a basis for the conclusion that *all* responsive information would necessarily be exempt under Exemption 6.  For one, SBA has made no showing that all of the third-party loan applications at issue in Plaintiffs' requests refer to individually-owned or closely-held businesses.  *Cf. Washington Post*, 502 F. Supp. 3d at 17 (finding Exemption 6 was relevant because "SBA explain[ed] . . . a 'significant portion' of businesses receiving loans under $150,000 are individually owned or closely held, such that disclosing their identities would reveal a component of their owners' personal finances").  As such, some of the loan information sought by Plaintiffs may very well not be traceable to an individual and, thus, not covered by the "personal" privacy protections of Exemption 6.  *See Multi AG Media LLC*, 515 F.3d at 1228.  More importantly, in addition to names and addresses, Plaintiffs seek "statistical data."  SBA has not explained why it could not produce the information sought by Plaintiffs but redact all identifying information; such a document would likely communicate the incidence of such stalling and be responsive to Plaintiffs' request.  For example, in response to Plaintiffs' request for statistical data of loan modifications where approved funds were stalled, SBA could provide a spreadsheet that communicates the incidence of such stalling, without revealing which businesses or individuals

---

[28]     Notably, *Jett* and *Blackwell* both consider agency withholdings under Exemption 7, which provides a lenient basis for agencies to withhold documents in the context of investigations.  It is unclear whether such categorical withholding applies outside the Exemption 7 context.  *See James Madison Project v. DOJ*, 208 F. Supp. 3d 265, 287 (D.D.C. 2016) (rejecting agency's invocation of Exemptions 5 and 6 to refuse to search for documents because "DoD cannot know, without searching, whether some of its responsive records may contain segregable, non-exempt information").

were the subject of the stall. Indeed, OCFO's response to the statistical information sought by Request No. 6795, discussed above, shows that such an approach is feasible. *See supra* p. 27. The court will not dictate the form SBA's response should take, however. It suffices that SBA has not adequately justified its decision not to search for responsive documents and release all segregable, non-exempt information. SBA must do so now.

### D.       RER Confidential Information

The final category of withheld materials consists of RER's confidential unit pricing, withheld under Exemption 4. Exemption 4 allows the agency to withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). "At least where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 440 (2019).

"Contractors' pricing information falls squarely within Exemption 4's ambit." *Stevens v. Broad. Bd. of Governors*, No. 18-CV-5391, 2023 WL 2428839, at *11 (N.D. Ill. Mar. 9, 2023). In this case, SBA redacted four pages and withheld four pages of documents that revealed RER's unit pricing for its contract with SBA. (*Russo Vaughn* Index II at 2.) As the *Vaughn* index explains, "SBA determined that RER considered the redacted information to be private and that SBA had given RER assurances of the confidentiality of this information during the contracting process." (*Id.*) SBA has thus demonstrated that the unit pricing was both considered private by RER and provided under assurances that the information would remain confidential—it is "logically within the domain" of Exemption 4. *Patterson*, 56 F.3d at 836.

IV.     **Publication**

Plaintiffs' final claim is that SBA has violated its mandatory publication obligations, or "reading room" obligations, under 5 U.S.C. § 552(a)(2).[29]   On the face of Plaintiffs' complaints, this count appears to merely repeat Plaintiffs' claims that SBA has not produced the documents sought by their requests, this time faulting SBA for not also making the information available for public inspection.  (*See Aviation* Am. Compl. ¶¶ 54, 57; *Russo* Am. Compl. ¶¶ 45, 48.)  The *Russo* cross-motion for summary judgment provides more detail on this claim, describing in general terms the kinds of § 552(a)(2) resources not available in SBA's reading room.

First, Plaintiffs contend that SBA's reading room page for "Final Opinion and Orders of Cases" contains "very limited records and none as to appeals, reconsiderations, etc. made by CARES ACT EIDL loan applicants" as required by § 552(a)(2)(A).  (*Russo* Pls.' Resp. at 10.) Second, Plaintiffs argue that "SBA fails to publish any policies not appearing in the Federal Register other tha[n] Standard Operating Procedures" as required by § 552(a)(2)(B).  (*Id*.)  Third, Plaintiffs claim that the reading room does not contain "written staff manuals or instructions affecting the public, any training materials for staff and contractors, forms used by contractors in adjudicating EIDL loans."  (*Id*. at 11.)  Fourth, Plaintiffs charge that SBA fails to provide online access to records that have been requested three or more times or likely to be the subject of

---

[29]     Each agency, in accordance with published rules, shall make available for public inspection in an electronic format--
(A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;
(B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register;
(C) administrative staff manuals and instructions to staff that affect a member of the public;
(D) copies of all records, regardless of form or format--
        (i) that have been released to any person under paragraph (3); and
        (ii)(I) that because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records; or (II) that have been requested 3 or more times; and
(E) a general index of the records referred to under subparagraph (D).   5 U.S.C. ¶ 552(a)(2).

subsequent requests, as required by § 552(a)(2)(D).  (*Id.*)  Finally, Plaintiffs argue that SBA's reading room does not satisfy § 552(a)(2)(E)'s indexing requirements because it does not provide "identifying information" as to any of SBA's received FOIA requests.  (*Id.*)  In short, Plaintiffs fault SBA for failing to follow every conceivable § 552(a)(2) obligation.  As evidence for these claims, Plaintiffs cite Glazer's declaration, in which she states that she visited SBA's online reading room and found, in conclusory terms, "Defendant . . . continues to withhold from the public" the records required by § 552(a)(2).  (Glazer Decl. ¶ 49.)  Attached to Glazer's declaration are screenshots of SBA's website (Ex. F & G, Glazer Decl. at 80–86), as well as screenshots of Glazer's search of SBA's public database for final orders and appeals (Ex. H, Glazer Decl. at 88–91).

A litigant is entitled to "bring an action under FOIA to enforce the reading-room provision, and may do so without first making a request for specific records."  *Citizens for Resp. and Ethics in Washington v. DOJ*, 846 F.3d 1235, 1241 (D.C. Cir. 2017) (citing *Irons v. Schuyler*, 465 F.2d 608, 614 (D.C. Cir. 1972)).  To state such a claim, however, the plaintiff "must identify ascertainable records or categories of records that are plausibly subject to the reading-room requirement and that the agency has failed to make publicly available."  *Campaign for Accountability v. DOJ*, 278 F. Supp. 3d 303, 320 (D.D.C. 2017).

Many of Plaintiffs' reading room claims fail under this threshold.  Plaintiffs claim that SBA has failed to meet its § 552(a)(2)(B) and § 552(a)(2)(C) obligations to make unpublished policy documents and administrative manuals available to the public but have not identified any specific policies or practices that exist but are not codified in available documents.  Plaintiffs contend in general terms that "[t]he SOP [Standard Operating Procedures] area provides no comprehensive archive of current and legacy SOPs and cables, memorandums, interpretative manuals on the published SOPs which SBA must use to convey comprehensive instructions to manage" third-party contracts.  (*Russo* Pls.' Resp. at 11.)  But a screenshot of SBA's webpage attached to Glazer's declaration (Ex. G, Glazer Decl. at 85) shows that SBA's reading room does provide links to five distinct online databases containing documents relating to "Standard Operating

Procedures," "Policy Notices," "Procedural Notices," "Other guidance," and "Business loan program improvements." *See* SBA Guidance Website, https://www.sba.gov/about-sba/open-government/sba-guidance (last accessed March 24, 2025). Plaintiffs have not explained how these available databases do not satisfy SBA's obligations under § 552(a)(2)(B) and § 552(a)(2)(C). So goes Plaintiffs' claims that SBA has failed its § 552(a)(2)(D) obligations to provide frequently requested records—Plaintiffs provide no basis for suspicion that documents are missing or unavailable on SBA's website, or for the assumption that such records cannot be found on SBA's "Frequently Requested Records" page. *See* SBA Frequently Requested Records, https://pal.sba.gov/app/Home.aspx (last accessed December 31, 2024).

Plaintiffs also assert that SBA has failed its § 552(a)(2)(E) obligations to create a "general index" of frequently requested records, in that SBA does not maintain so-called "FOIA logs." (*Russo* Pls.' Resp. at 11.) Again, Plaintiffs cite no authority for this claim, nor do they explain how SBA's "Frequently Requested Records" page does not adequately communicate which records are subject to repeated FOIA requests. Moreover, while FOIA's remedial provision grants this court "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant," the Act does not appear to authorize the court to police an agency's method of indexing. *See* 5 U.S.C. § 552(a)(4)(B); *see also Humane Soc'y. of the U.S. v. U.S. Fish and Wildlife Serv.*, 838 Fed. Appx. 721, 732 (4th Cir. 2020) (unpublished) ("There is no reasonable reading of the remedial provision that demonstrates entitlement to relief based upon the sufficiency of a FOIA index.").

That leaves Plaintiffs' claim that SBA has failed its obligations under § 552(a)(2)(A) to make "final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases" available in SBA's reading room. Plaintiffs stand in a stronger position on this claim because they have provided evidence that SBA's publicly-available database is potentially deficient—Glazer's declaration shows that a search of SBA's OHA Decision database produced no decisions for the search term "cares act," no results for the search term

37

"coronavirus," no results for the combined terms "covid 19" and "eidl," and no results for decisions after 2013 for the terms "eidl" and "reconsideration." (*See* Ex. H, Glazer Decl. at 88–91.) Indeed, using both the OHA-assigned appeal number and plain language search terms, the court could not locate the OHA decision regarding Plaintiffs' FOIA request in this case on SBA's database. For their part, SBA has not explained why the online OHA decision database does not appear to contain Cares Act-related EIDL decisions.

Even if this court determines that SBA has failed to meet its publication obligations under § 552(a)(2)(A), however, the proper remedy is uncertain. The Seventh Circuit has not spoken to the extent of a federal court's jurisdiction in enforcing FOIA's reading room provisions, and other circuits are split. The D.C. Circuit has held that, after determining that an agency has withheld documents that it is required to make available under § 552(a)(2), federal courts may order such documents to be provided to the plaintiff but not to the public at large. *See Citizens for Resp. and Ethics in Washington*, 846 F.3d 1235 at 1242–43. The Ninth and Second Circuits have held that FOIA gives federal courts broad authority to order the release of improperly withheld documents to both the plaintiff and the public at large. *See Animal Leg. Def. Fund v. U.S. Dep't of Agric.*, 935 F.3d 858, 875–76 (9th Cir. 2019); *N.Y. Legal Assistance Grp. v. Bd. of Immig. Appeals*, 987 F.3d 207, 213–15 (2d Cir. 2021). Neither Plaintiffs nor SBA have expressed a position on this question, and the court will invite additional briefing. In addressing the question of remedies, SBA may also explain whether the Cares Act-EIDL decisions are, in fact, available by some other method in its reading room, or otherwise explain why its OHA Decisions database fulfills its obligations under § 552(a)(2)(A).

## CONCLUSION

SBA's motion for summary judgment is granted in part and denied in part. It is granted with respect to the following portions of Plaintiffs' complaints:

1. Count I of the *Russo* and *Aviation* Complaints,

2. The *Aviation* Plaintiffs' inadequate search claim regarding Request No. 6796,

3. Plaintiffs' claims of improper withholding of case file notes under FOIA Exemption 5,

4. The *Russo* Plaintiffs' claims of improper withholding of individual bank account numbers under FOIA Exemption 6,[30]

5. The *Russo* Plaintiffs' claim of improper withholding of RER Solutions unit pricing information under FOIA Exemption 4, and

6. Plaintiffs' "reading room" claims under §§ 552(a)(2)(B)–(E).

Plaintiffs' motions for summary judgment are also granted in part, and the court orders the following:

7. Regarding Request No. 6797, the court directs SBA to run a search of the appropriate database(s) for records relating to loan no. 1677379108 and produce responsive, non-exempt documents,

8. Regarding Request No. 6799, the court directs SBA to run a search of the appropriate database(s) for records regarding loan no. 8279037910 and produce responsive, non-exempt documents,

9. The court directs SBA to release the names and addresses of third-party borrowers in the September 8, 2023-produced spreadsheet, and the names, addresses, and bank account information for all entities in the spreadsheet that are *not* individually owned or closely held, and

10. Regarding the requests for statistical information involving third parties in Requests Nos. 6797, 6800, and 3974, the court directs SBA to run searches of the appropriate databases using the search terms provided by the requests and release all responsive, non-exempt information.

Lastly, the court withholds judgments on three issues, and holds the following:

11. Regarding the specific data of banks returning EIDL funds sought by Request No. 6795, SBA must provide further detail on what search terms OCFO used to uncover responsive documents, and explaining why such terms were reasonably expected to produce responsive records,

12. Regarding Plaintiffs' requests for internal policies in Requests Nos. 6795, 6797, 6799, and 6800 (discussed in the OHA decision), the court directs SBA to provide more detail, in the form of a declaration, on why the links provided by the OHA Decision, and the later search for policy documents by PDC, were reasonably likely to contain all responsive policy documents, and

---

[30]     Subject to No. 9 below.

13. The parties shall provide supplemental briefing on the question of what remedies are available to enforce § 552(a)(2)(A), with particular attention to the circuit split between the D.C., Ninth, and Second Circuits.

The court will hold a status conference with the parties to determine a fair schedule for each party to satisfy their obligations consistent with this order.

ENTER:

Dated:  March 31, 2025

_____
REBECCA R. PALLMEYER
United States District Judge